**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JENNIFER K. ANDERSON, | * | |
| *Plaintiff/Third-Party Plaintiff*, | * | |
| v. | * | |
| AARON ROBINSON, | * | |
| *Defendant*, | * | Civil Action No. RDB-24-3100 |
| v. | * | |
| STANDARD FIRE INSURANCE COMPANY *doing business as* TRAVELERS INSURANCE COMPANY, | * | |
| | * | |
| *Third-Party Defendant.* | * | |

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

In this personal injury action, Plaintiff Jennifer K. Anderson ("Plaintiff" or "Ms. Anderson") alleges that Defendant Aaron Robinson ("Defendant" or "Mr. Robinson") injured her after they collided in a skiing accident in Utah. *See* (ECF No. 1). On October 24, 2024, Ms. Anderson initiated this action by filing in this Court a one-Count Complaint against Mr. Robinson, alleging negligence.[1] (*Id.*) On December 23, 2025, with leave of this Court, Plaintiff filed a one-Count Third-Party Complaint against Third-Party Defendant The Standard Fire Insurance Company doing business as Travelers Insurance Company ("Travelers"), seeking a declaration that Travelers "is responsible for providing insurance

[1] This case was originally assigned to Judge Rubin of this Court before being reassigned to the undersigned on July 24, 2026.

coverage [for Mr. Robinson] in this case." (ECF No. 25 ¶ 10); *see* (ECF No. 13). This Court has diversity jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a). *See* (ECF No. 1 ¶ 3).

Presently pending before this Court are two motions: (1) Plaintiff's Motion for Summary Judgment against Defendant (ECF No. 14) ("Plaintiff's Motion" or "Motion for Summary Judgment"), and (2) Travelers' Motion to Dismiss or, in the Alternative, to Sever and Stay Plaintiff's Third-Party Complaint (ECF No. 37) ("Travelers' Motion"). Defendant has responded in Opposition to Plaintiff's Motion (ECF No. 17), and Plaintiff has replied (ECF No. 20). Additionally, Plaintiff has responded in Opposition to Travelers' Motion (ECF No. 38), and Defendant has filed a Response in Support (ECF No. 39) of Plaintiff's Opposition. The parties' submissions have been reviewed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025).

For the reasons set forth below, Plaintiff's Motion for Summary Judgment (ECF No. 14) is DENIED. Plaintiff's negligence claim against Defendant shall proceed. *See* (ECF No. 1). Also as set forth below, Travelers' Motion (ECF No. 37) is DENIED IN PART and GRANTED IN PART. Specifically, Travelers' Motion (ECF No. 37) is DENIED to the extent it seeks dismissal of the third-party claim, but it is GRANTED to the extent it seeks to sever and stay the third-party claim pending resolution of the underlying negligence claim.

**BACKGROUND**

As detailed below, the facts relevant to Travelers' Motion arise from an insurance policy independent of the skiing accident that gave rise to Plaintiff's negligence claim. Accordingly,

the Court addresses the facts relevant to Plaintiff's Motion for Summary Judgment (ECF No. 14) before recounting facts related to Travelers' Motion (ECF No. 37).[2]

**I. The Accident**

The collision giving rise to this matter occurred on January 20, 2023, at Snowbird Ski & Summer Resort ("Snowbird") outside of Salt Lake City, Utah. (ECF No. 14-2 at 8, 9); *see also* (ECF No. 14-1 at 7; ECF No. 25-2 at 1). Around 12:00 p.m. on January 20, 2023, Ms. Anderson was skiing on the backside of a mountain at Snowbird, in an area known as "Mineral Basin." (ECF No. 14-2 at 9.)[3] At the bottom of Mineral Basin is a wide-open terrain where at least five trails converge. (ECF No. 14-4 at 20; ECF No. 17-1 3.) Ms. Anderson does not remember which of these trails she was on at the time of the collision. (ECF No. 14-1 at 9.) She similarly does not remember whether she was moving or stopped at the time of the accident, her speed if she was moving, or what direction she was traveling, though she was near the bottom of her trail and was "making S turns" when the collision occurred. *See* (*id.* at 10–11).[4]

Around the same time, Mr. Robinson was snowboarding down the Fossil Chutes trail on Mineral Basin. (ECF No. 14-2 at 9; ECF No. 17-1 at 3.) Ms. Anderson testified that she was not aware of this trail. (ECF No. 14-1 at 11.) According to Mr. Robinson, Ms. Anderson crossed perpendicularly into his path,[5] and he immediately braked in response. (ECF No. 17-

[2] Except where otherwise noted, the facts recounted herein as to Plaintiff's Motion for Summary Judgment are undisputed. As to Travelers' Motion, as noted below, this Court accepts the truth of all facts in the Third-Party Complaint and construes them in favor of Ms. Anderson as the Third-Party Plaintiff.
[3] Unless otherwise noted, the Court cites to the electronic filing pagination as opposed to original pagination.
[4] Although Ms. Anderson testified that she did not recall if she was moving at the time of the accident, she also testified that she *was* moving at the time of the collision. *E.g.*, (ECF No. 14-1 at 10).
[5] Ms. Anderson testified that she was *not* moving perpendicularly, but she did say that, in making her "S turns," she would have been going either "to the right" or to the left. (ECF No. 14-1 at 10–11.)

1 at 3.) Unfortunately, Mr. Robinson's snowboard contacted Ms. Anderson's lower right leg, and they both fell to the ground. (*Id.*; ECF No. 14-1 at 11; ECF No. 14-2 at 9–10.) Ms. Anderson recalled that the collision caused her left ski to detach, and a bystander returned her ski to her. (ECF No. 14-1 at 11–12.) Ms. Anderson did not recall whether Mr. Robinson helped her up, but he recalled assisting her to stand. (ECF No. 14-1 at 11; ECF No. 14-2 at 9; ECF No. 17-1 at 3.) They both then continued down the mountain—Ms. Anderson skiing and Mr. Robinson snowboarding—to report the incident to Snowbird's ski patrol. (ECF No. 14-1 at 11–12; ECF No. 14-2 at 9–11; ECF No. 17-1 at 3.) Ms. Anderson testified that although she was able to ski, she did so with all of her weight on her right leg because she "could not put weight on [her] left leg." (ECF No. 14-1 at 12.) Once at the bottom of the mountain, they each stood on their own and interacted with ski patrol. (*Id.*; ECF No. 14-2 at 11.) "The parties exchanged information, and [Mr. Robinson] waited with [Ms. Anderson] until someone from her party arrived." (ECF No. 17-1 at 3); *see also* (ECF No. 14-1 at 11–12).

Mr. Robinson sustained no injuries from this incident. (ECF No. 17-1 at 3.) Ms. Anderson testified that she injured her left calf in the collision and "was seen at the Snowbird Medical Clinic," which conducted an x-ray of her left calf, ultrasound of her left hamstring, and a concussion check. (ECF No. 14-1 at 12.) Based on this visit, she understood that she had a calf strain but no concussion or broken bones. (*Id.* at 13.) Thereafter, she developed an eight-inch contusion on her left calf for three weeks. (*Id.*) According to Ms. Anderson, she underwent surgery on her left hamstring on March 28, 2023, which required her to use crutches for twelve weeks during her recovery. (*Id.* at 20.) She testified that multiple

complications arose during the recovery process and that she has received extensive rehabilitation and physical therapy. *See* (*id.* at 14–22).

## II. The Responsibility Code

Both Ms. Anderson and Mr. Robinson have ample experience on the slopes. *See, e.g.*, (*Id.* at 28; ECF No. 14-2 at 6–7). Approximately 90% of ski and snowboarding resorts nationwide have codified and implemented "Your Responsibility Code" ("Responsibility Code"), which outlines basic courtesy guidelines to minimize the risk of collisions.[6] (ECF No. 14-5); *see also* (ECF No. 14-3 at 8, 11–14). Snowbird has posted the Responsibility Code online and at the base of each of its lifts. (*Id.* at 10–14 (explaining Responsibility Code purposes and visibility at Snowbird).) The Code contains four rules relevant to this case:

(1) Always stay in control. You must be able to stop or avoid people or objects.
(2) People ahead or downhill of you have the right-of-way. You must avoid them.
(3) Stop only where you are visible from above and do not restrict traffic.
(4) Look uphill and avoid others before starting downhill or entering a trail.

(ECF No. 14-5.) Both Ms. Anderson and Mr. Robinson have acknowledged that they understand these "generally accepted" "rules of the road" from their years on the slopes. (ECF No. 14-1 at 28; ECF No. 14-2 at 10; ECF No. 14-3 at 8.)

## III. Travelers' Insurance Policy[7]

Mr. Robinson may have been living with his parents in Maryland at the time of the incident. *E.g.*, (ECF No. 14-2 at 11). As such, he may have been covered by his parents'

[6] The Code was "developed by [National Ski Area Association] and Ski Safety U.S." (ECF No. 14-3 at 5.)
[7] The facts recounted herein are related to Plaintiff's Third-Party Complaint (ECF No. 25) and Travelers' Motion (ECF No. 37) to dismiss or, alternatively, sever and stay that Third-Party Complaint. As such, this Court reaches no conclusions as to the truth of these facts but instead, as required when evaluating a motion to dismiss under Federal Rule 12(b)(6), "accept[s] as true all well-pleaded facts in a complaint and construe[s]

insurance policy with The Standard Fire Insurance Company doing business as Travelers Insurance Company ("Travelers"). *See generally* (ECF No. 25). That policy contains two clauses relevant to this matter: (1) a no-action clause, and (2) a coverage clause. (ECF No. 25-1 at 18, 23.) The no-action clause provides:

> **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.
>
> No one shall have any right to join us as a party to any action against any **insured**. Also, no action with respect to Coverage E can be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

(*Id.* at 23.) Coverage E provides that Travelers has a duty to defend the insured in any "claim made or . . . suit brought against any **insured** for damages because of **bodily injury** . . . caused by an **occurrence** to which th[e] coverage applies, even if the claim or suit is false . . . ." (*Id.* at 18.)

After Ms. Anderson served Mr. Robinson her Complaint in this case, his parents provided a copy of the Complaint and summons to Travelers. (ECF No. 25-2 at 1.) In response, Travelers issued a letter denying coverage of Mr. Robinson on the basis that he was not an "insured" as defined by the policy. (*Id.*) As applicable to this case, the policy defines "insured" as "you and the following residents of your household: (a) your relatives . . . ." (ECF No. 25-1 at 5); *accord* (ECF No. 25-2 at 2). Notably, however, the policy does not define "resident." *See* (ECF No. 25-1 at 5–6 ("Definitions")). According to Travelers' denial letter, because Mr. Robinson signed a lease in January 2022 for an apartment in Washington, D.C.,

---

them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).

he was not a "resident" of the home as required to be an "insured" under the policy. (*Id.* at 2.) Separately, Defendant has noted that "State Farm Fire and Casualty Company and/or State Farm Mutual Automobile Insurance Company may have a financial interest in the outcome of this litigation in that it has issued a policy of liability insurance to Aaron Robinson . . . which was in full force and effect on and as of January 20, 2023, and which may provide coverage for the Defendant . . . ." (ECF No. 5-1 at 1.)

## IV. Procedural History

Ms. Anderson initiated this action on October 24, 2024, by filing in this Court a one-Count Complaint alleging negligence against Mr. Robinson. (ECF No. 1.) Mr. Robinson filed his Answer on November 15, 2024. (ECF No. 5.) The parties proceeded to discovery, which concluded on September 3, 2025. (ECF No. 10.) Ms. Anderson then filed the pending Motion for Summary Judgment (ECF No. 14), to which she has attached transcripts of depositions of herself, Mr. Robinson, and her proffered expert, Austin Bourret ("Mr. Bourret"), along with a report by Mr. Bourret and an excerpted page from the report displaying the Responsibility Code.[8] (ECF No. 14-1; ECF No. 14-2; ECF No. 14-3; ECF No. 14-4; ECF No. 14-5.) Mr. Robinson has filed an Opposition (ECF No. 17), to which he attaches a copy of his Answers to Plaintiff's Interrogatories (ECF No. 17-1). Ms. Anderson has replied (ECF No. 20).

On December 23, 2025, with leave of Court, Ms. Anderson filed a Third-Party Complaint (ECF No. 25) against Travelers, seeking a declaratory judgment as to the issue of coverage.[9] (ECF No. 24; ECF No. 25 ¶¶ 9–10). Travelers then filed a Motion to Dismiss Ms.

---

[8] Although Ms. Anderson frames Mr. Bourret as an expert witness, he has not been certified as an expert in this case, and this Opinion shall not be construed to certify him as such.

[9] Mr. Robinson did not object to Ms. Anderson's filing of a Third-Party Complaint against Travelers but did not consent to being joined as a Third-Party Plaintiff. (ECF No. 25 ¶ 12.)

Anderson's Third-Party Complaint, or in the Alternative, to Sever and Stay the Third-Party Complaint ("Travelers' Motion") (ECF No. 37). Ms. Anderson has responded in Opposition (ECF No. 38), and Mr. Robinson has filed a Response in Support of Ms. Anderson's Opposition (ECF No. 39). This matter is now ripe for review.

## STANDARDS OF REVIEW

### I. Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a court's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Judd*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 380 (2007). This Court "must not weigh evidence or make

credibility determinations." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *accord Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015). Indeed, it is the function of the factfinder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (citing *Anderson*, 477 U.S. at 249). To survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That is, the nonmoving party bears the burden to submit evidence that is "significantly probative" as to a genuine issue of material fact. *Anderson*, 477 U.S. at 249–50.

## II. Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. "'[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action . . . ." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v.*

*Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## ANALYSIS

### I. Plaintiff's Motion for Summary Judgment (ECF No. 14)

At the summary judgment stage, the movant bears the initial burden to establish the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where, as here, the movant for summary judgment also bears the burden of proof as to the underlying claim, she must (1) initially establish the absence of any genuine issue of material fact *and* (2) ultimately, establish entitlement to judgment as a matter of law as to every element of her claim. Fed. R. Civ. P. 56(c); *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 521–22 (4th Cir. 2003) (explaining summary judgment burden where claimant is also movant). As explained below, Ms. Anderson has not shown the absence of any genuine issue of material fact. Moreover, even assuming, *arguendo*, that she had met that initial burden, she has not established that Mr. Robinson breached his duty of care as a matter of law. Thus, summary judgment is not appropriate in this case.

As a threshold matter, where, as here, a plaintiff alleges a state-law claim in federal court based on diversity jurisdiction, federal courts follow the doctrine set forth in *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Under the *Erie* doctrine, a federal court sitting in diversity applies federal procedural law and the substantive law of the forum in which the court sits. *See, e.g.*, *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n. 3 (4th Cir. 2013). For purposes of *Erie* analysis, choice of law constitutes substantive law such that this Court applies the choice-of-law principles of Maryland. *See, e.g.*, *Koppers Performance Chems., Inc. v. Argonaut-Midwest Ins. Co.*, 105 F.4th 635, 641 n.4 (4th Cir. 2024). In tort actions, Maryland adheres to the rule of *lex loci delicti*, meaning it applies the substantive law of the state where the wrong occurred. *E.g.*, *Lilly v. Balt. Police Dep't*, 694 F. Supp. 3d 569, 582 (D. Md. 2023) (citations omitted). It is undisputed that the alleged tortious wrong in this case occurred in Utah such that Ms. Anderson's negligence claim is governed by Utah law. *See* (ECF No. 14; ECF No. 17).

To prove negligence under Utah law, "the 'plaintiff must establish that (1) [the] defendant owed [the] plaintiff a duty of care, (2) [the] defendant breached that duty, and . . . (3) the breach was the proximate cause of (4) [the] plaintiff's injuries or damages.'" *Donovan v. Sutton*, 498 P.3d 382, 386 (Utah 2021) (quoting *B.R. ex rel. Jeffs v. West*, 275 P.3d 228, 230 n.2 (Utah 2012)). In this case, the parties agree that Mr. Robinson owed Ms. Anderson a duty of care under the first element. (ECF No. 14-1 at 28; ECF No. 14-2 at 10.) They do not agree, however, as to the remaining elements of negligence. (ECF No. 14-2 at 9; ECF No. 17-1 at 3, 12–13.) As explained below, because Ms. Anderson has established neither the absence of a

genuine issue of material fact nor entitlement to judgment as a matter of law as to the breach element of negligence, she is not entitled to summary judgment.[10]

Under Utah law, "a person has a duty to exercise reasonable care while skiing."[11] *Donovan*, 498 P.3d at 384, 388, 390. "Breach of [such] duty is 'determined on a case-specific basis,' generally by the fact finder." *Id.* at 388 (internal citation omitted) (quoting *Jeffs*, 275 P.3d at 235). Indeed, "the jury's unique competence in applying the 'reasonable man' standard is thought ordinarily to preclude summary judgment in negligence cases." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 n.12 (1976) (citation omitted); *Jackson v. Dabney*, 645 P.2d 613, 615 (Utah 1982) ("Ordinarily, whether a defendant has breached the required standard of care is a question of fact for the jury." (citations omitted)).[12] In this case, therefore, whether Mr. Robinson breached his duty to exercise reasonable care generally is a question for the jury.

Importantly, "[a]lthough this case arises in diversity, 'the sufficiency of the evidence to create a jury question is a matter governed by federal law.'" *Kritter v. Mooring*, 142 F.4th 267, 273 (4th Cir. 2025) (quoting *Owens ex rel Owens v. Bourns, Inc.*, 766 F.2d 145, 149 (4th Cir. 1985)); *accord Pegasus Helicopters, Inc. v. United Techs. Corp.*, 35 F.3d 507, 510 (10th Cir. 1994). Expert testimony is treated "[l]ike any other evidence" and "will not preclude summary judgment unless it raises a genuine dispute concerning a material fact." *Dash v. Mayweather*, 731 F.3d 303, 316 (4th Cir. 2013); *see Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005)

---

[10] Because Ms. Anderson has not met her burden to establish as a matter of law that Mr. Robinson breached his duty of care, as explained below, this Court does not reach the third and fourth elements of negligence.

[11] As noted above, the parties in this case do not dispute that this is the applicable standard of care. *See* (ECF No. 14-1 at 28; ECF No. 14-2 at 10).

[12] As the U.S. Court of Appeals for the Fourth Circuit has explained, "because of the peculiarly elusive nature of the concept of negligence, it is the rare personal injury case which may be properly disposed of by summary judgment." *Bland v. Norfolk S. R. Co.*, 406 F.2d 863, 866 (4th Cir. 1969) (citations omitted).

("[C]onclusory allegations [by proffered experts] without specific supporting facts have no probative value" and are "insufficient to support summary judgment." (citations omitted)). Where, as here, an element of a claim is ordinarily reserved for the jury, summary judgment to the plaintiff is appropriate only where the facts are undisputed such that no reasonable juror could find against the plaintiff on that issue. *See Culver v. Continental Ins. Co.*, 1 F. Supp. 2d 545, 547 (D. Md. 1998) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986)). Accordingly, to establish entitlement to summary judgment as to breach in this case, Ms. Anderson must show that (1) there exists no genuine dispute of material fact *and* (2) "no reasonable fact finder could come to a different conclusion than that" Mr. Robinson's conduct was unreasonable. *Id.* at 545, 547 (D. Md. 1998). She has not met this burden.

**A. Genuine Disputes of Material Facts Exist as to Breach**

In the context of skiing accidents, although Utah law recognizes no "categorical rule that an inadvertent fall, by itself, can *never* establish negligence," *Donovan*, 498 P.3d at 389 (emphasis added), "proof of some negligent conduct before the collision" is generally required, *Ricci v. Schoultz*, 963 P.2d 784, 786 (Utah Ct. App. 1998), *abrogated in part by Donovan*, 498 P.3d 382. Thus, summary judgment is ordinarily improper where the plaintiff "has not identified any conduct by [the defendant] that departed from h[is] duty to ski reasonably, other than the fact of h[is] loss of control itself." *Donovan*, 498 P.3d at 389. Moreover, where material facts about the collision—such as who the uphill skier was, who collided into whom, visibility of the skiers and the terrain, how fast the skiers were traveling, how flat the slope was, whether the skiers were skiing in control, and the direction the skiers were traveling—are genuinely

disputed, summary judgment is improper. *E.g.*, *Ulissey v. Shvartsman*, 61 F.3d 805, 809–10 (10th Cir. 1995).[13]

In this case, material facts—including both Ms. Anderson's and Mr. Robinson's location, speed, direction of travel, and degree of control—remain disputed such that summary judgment is improper. *See, e.g.*, *id.* The parties agree that they collided in a flat area at the bottom of Mineral Basin where at least five runs converge. (ECF No. 14-1 at 14; ECF No. 14-4 at 20; ECF No. 17-1 at 3.) They disagree, however, as to whether they were on the same track, such that they would have been moving generally in the same direction so that one of them could reasonably be considered uphill of the other. *Compare* (ECF No. 14-1 at 9 (Ms. Anderson cannot remember which path she was using but was using a blue (intermediate level) slope)), *with* (ECF No. 17-1 at 3 (Mr. Robinson was using a black diamond (advanced level) slope)); *see generally* (ECF No. 14-4 (Mr. Bourret testified that "[t]he collision occurred . . . after descending intermediate to advanced terrain")). Ms. Anderson was not aware of the run on which Mr. Robinson was snowboarding nor of any snowboarders in the vicinity. (ECF No. 14-1 at 11.)

Ms. Anderson's proffered expert, Mr. Bourret, did not determine either skier's speed or direction of travel, nor did he determine where the accident occurred. (ECF No. 14-4 at

---

[13] Although the Tenth Circuit in *Ulissey v. Shvartsman*, 61 F.3d 805 (10th Cir. 1995) considered skier negligence under Colorado law, the substantive duties of skiers under Colorado law are identical to those of skiers at Snowbird. *Compare Ulissey*, 61 F.3d at 809 (describing Colorado statutory duties), *and LaVine v. Clear Creek Skiing Corp.*, 557 F.2d 730, 733 (10th Cir. 1977) (describing National Ski Patrol and National Skier's Courtesy Code duties, in addition to the skiing "right-of-way principle"), *with* (ECF No. 14-5 at 2 (displaying duties under "Responsibility Code")). Significantly, the Court of Appeals of Utah has approvingly cited *LaVine v. Clear Creek Skiing Corp.*, 557 F.2d 730 (10th Cir. 1977), which similarly held that material facts about skier control, direction, and speed were best left to the jury to decide. *See LaVine*, 55 F.2d at 732, 735; *Ricci v. Schoultz*, 963 P.2d 784, 786 (Utah Ct. App. 1998).

16–17.) He based his opinion on his belief that Mr. Robinson testified that he hit Ms. Anderson from behind. (*Id.* at 23.) Yet, Mr. Robinson testified that he was *not* behind Ms. Anderson, as that "would entail her back being to [him], which it was not." (ECF No. 14-2 at 9.) Mr. Robinson testified that he was higher in elevation than Ms. Anderson, (*id.*), but Ms. Anderson was "making S turns." (ECF No. 14-1 at 10); *see also* (ECF No. 17-1 at 3 ("Plaintiff cross[ed] his path . . . in a drifting, perpendicular direction . . . .")). Thus, she was not moving straight downward, leaving open material factual issues such as whether she was downhill of Mr. Robinson or unable to see him, and, therefore, unable to avoid collision. (ECF No. 14-1 at 27; ECF No. 14-4 at 23.)

Mr. Bourret testified that Ms. Anderson's visibility "doesn't have any relevance" because "it's not fair to put any blame on the downhill skier." (ECF No. 14-4 at 26, 28.) According to Mr. Bourret:

> [E]ven if [Ms. Anderson] had veered off to the side, . . . even if she had been erratic or fallen. Maybe she . . . lost control and fell. But . . . it's not her responsibility to avoid getting collided with from behind. It's the responsibility of the person behind to maintain control and to stay in a position where they're not going to collide with the downhill skier.

(*Id.* at 26.) As explained above, however, there exists some factual dispute as to whether Ms. Anderson was the downhill skier in the collision. That is, if Ms. Anderson was not actually skiing downhill but rather perpendicularly into snowboarding paths, *see* (ECF No. 17-1 at 3), it *may* have been her responsibility to ensure that she was not getting in the way, *see* (ECF No. 14-5 (requiring skiers to "[l]ook uphill and avoid others before . . . entering a trail")). Thus, Ms. Anderson's position on the slope, direction of skiing, and control are relevant to the issue

of breach.[14] *See, e.g.*, *Ulissey*, 61 F.3d at 809–10. As explained above, the Tenth Circuit has made clear that the parties' directions of travel are material to negligence in skiing accidents. *See id.* (holding genuine dispute of material fact existed where it was unclear which party was the uphill skier, which direction parties were traveling, and whether they were in control). In this case, the genuine dispute of material fact as to the location of each party—and specifically which party was uphill of the other—precludes summary judgment.[15]

**B. Plaintiff is Not Entitled to Judgment as a Matter of Law**

Furthermore, even assuming, *arguendo*, that there existed no genuine issue of material fact as to breach, Ms. Anderson has not established as a matter of law that Mr. Robinson's conduct was unreasonable. To demonstrate Mr. Robinson's negligence, Ms. Anderson cites to Mr. Bourret's proffered opinion that "if [Mr. Robinson] had maintained control, he never would've collided with Ms. Anderson. You know, if you're in control, accidents don't happen. Collisions don't happen." (ECF No. 14-4 at 25.) However, Mr. Bourret "has not identified any conduct by [Mr. Robinson] that departed from h[is] duty to ski reasonably, other than the fact of h[is] loss of control itself." *Donovan*, 498 P.3d at 389. As explained above, evidence that a skier lost control *alone* generally is not sufficient to establish breach under Utah law. *Id.* Although the Supreme Court of Utah has acknowledged a hypothetical scenario in which a

[14] The parties dispute whether Mr. Robinson maintained control. In his Answers to Plaintiff's Interrogatories (ECF No. 17-1), Mr. Robinson asserted that he "was traveling at a controlled speed" and that "[h]e immediately braked" when Plaintiff crossed his path "but was unable to avoid contact." (*Id.* at 2–3.) Mr. Bourret, however, asserts that the collision could only have occurred if Mr. Robinson had not been in control. As explained above, it is the role of the jury to evaluate the credibility of witnesses providing differing or inconsistent testimony. *See, e.g.*, *Tolan*, 572 U.S. 656–57.

[15] In addition to the issue of whether Mr. Robinson breached his duty of care, the parties also dispute (1) whether Ms. Anderson was contributorily negligent, and (2) whether Mr. Bourret's testimony is admissible. (ECF No. 17 at 10–13.) Because the Court denies Plaintiff's Motion, it does not reach these issues at this time.

plaintiff could show breach through a skier's mere loss of control, it made clear that "it is difficult to imagine [such a] factual scenario." *Id.* In sum, facts material to breach remain in dispute, and Ms. Anderson has not established entitlement to judgment as a matter of law as to the issue of breach. Accordingly, Plaintiff's Motion for Summary Judgment (ECF No. 14) is DENIED.

## II. Travelers' Motion to Dismiss or, in the Alternative, to Sever and Stay Plaintiff's Third-Party Complaint (ECF No. 37)

Separately, Travelers has moved to dismiss Plaintiff's Third-Party Complaint (ECF No. 25) or, in the alternative, to sever and stay her third-party claim. (ECF No. 37.) As noted above, Plaintiff seeks declaratory judgment that Travelers "is responsible for providing insurance coverage [for Mr. Robinson] in this case." (ECF No. 25 ¶ 10); *see also* (ECF No. 38 ¶¶ 3, 5–8). The Federal Declaratory Judgment Act, 28 U.S.C. § 2201,[16] authorizes a district court to "declare the rights and other legal relations of any interested party seeking such declaration." *Id.* § 2201(a). The Fourth Circuit has "frequently approved the use of federal declaratory judgment actions to resolve disputes over liability insurance coverage . . . ." *Nautilus Ins. Co. v. Winchester Homes*, 15 F.3d 371, 375–76 (4th Cir. 1994), *abrogated in part on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). "[A] declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal

---

[16] Although Plaintiff has not specified whether she seeks declaratory judgment under federal or state statute, *see generally* (ECF No. 25), this Court construes her claim under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. As explained above, federal courts sitting in diversity apply federal procedural law and state substantive law. The Federal Declaratory Judgment Act "is a procedural statute that creates no substantive rights." *First Nationwide Mortg. Corp. v. FISI Madison, LLC*, 219 F. Supp. 2d 669, 672 n.1 (D. Md. 2002) (citations omitted); *accord, e.g.*, *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937) ("[T]he Declaratory Judgment Act is procedural only."). Accordingly, federal courts in the Fourth Circuit evaluate declaratory judgment actions as procedural claims for relief under federal law. *See, e.g.*, *First Nationwide Mortg. Corp.*, 219 F. Supp. 2d at 672 n.1; *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013) (construing under federal law a state-law claim for declaratory judgment removed to federal court).

relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (quoting *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996)).

### C. Dismissal

Travelers asserts that Ms. Anderson is procedurally barred from seeking declaratory judgment of coverage at this time because she has yet to obtain a final judgment against Mr. Robinson. *See generally* (ECF No. 37). According to Travelers, both a state insurance statute and the no-action clause within its policy militate in favor of dismissal of Plaintiff's Third-Party Complaint for a declaration of coverage.[17] *See* (*id.*). In Opposition (ECF No. 38), Ms. Anderson argues that Maryland law permits injured parties to sue the alleged tortfeasor's insurer prior to any final judgment in the underlying tort action where the coverage issues are separate and distinct from the tortfeasor's liability. (*Id.* at 2.) As explained below, neither state law nor the relevant insurance policy justify dismissal of Ms. Anderson's third-party claim against Travelers.

First, Travelers contends that § 19-102(b)(2) of Maryland's Insurance Article "precludes a direct action against a liability insurer until there has been a determination of

[17] Pursuant to the *Erie* doctrine, this Court evaluates Travelers' insurance policy under Maryland choice of law principles and Maryland law of contracts. When there is no choice-of-law provision in a contract, Maryland follows the principle of *lex loci contractus*, meaning it applies the law of the state where the contract was made. *See, e.g.*, *Roy v. Nw. Nat'l Life Ins. Co.*, 974 F. Supp. 508, 512 (D. Md. 1997), *aff'd*, 141 F.3d 1159 (4th Cir. 1998); *Encompass Home & Auto Ins. Co. v. Harris*, 93 F. Supp. 3d 424, 432 (D. Md. 2015). "For choice of law purposes, a contract is made where the last act necessary to make the contract binding occurs." *Roy*, 974 F. Supp. at 512. Typically, "[t]he *locus contractus* of an insurance policy is the state in which the policy is delivered and the premiums are paid." *Hyde v. Fidelity & Deposit Co. of Md.*, 23 F. Supp. 2d 630, 632 (D. Md. 1998) (citations omitted). The insurance policy at issue here was issued for coverage in Maryland. (ECF No. 25-1 at 2.)

liability or judgment against the tortfeasor." (ECF No. 37-1 at 4 (collecting cases).) Under § 19-102(b)(2), an injured third party may bring a claim against an insurer if, "after execution on a final judgment entered in an action against an insured," the injured party "is unable . . . to recover the full amount of the final judgment . . . ." Thus, § 19-102(b) is inapplicable where, as here, the injured party has not yet obtained a final judgment against the insured.

Rather, this case falls within the limited circumstances in which Maryland law authorizes an injured party to sue an alleged tortfeasor's insurer prior to final judgment as to an underlying tort claim. As Maryland's highest court has held:

> [I]t is not necessary that there be a final judgment against an insured tortfeasor, much less an execution on the judgment, before an injured claimant may bring an action against the tortfeasor's liability insurer. Moreover, *prior to any determination in the underlying tort case, the injured claimant ordinarily may bring a declaratory judgment action against the tortfeasor's liability insurer to resolve insurance policy coverage disputes which are separate and independent from the liability issues in the underlying litigation.*

*Harford Mut. Ins. Co. v. Woodfin Equities Corp.*, 687 A.2d 652, 659 (Md. 1997) (emphasis added) (footnote omitted). That is, prior to any final judgment in an underlying tort action, an injured party may raise "'question[s] of coverage or defenses under the language or requirements of the insurance policy' that are 'separate and distinct from the issues' presented in the liability proceedings." *T.H.E. Ins. Co. v. Davis*, 54 F.4th 805, 821 (4th Cir. 2022) (quoting *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 438 A.2d 282, 286 (Md. 1981)).

In this case, Travelers asserts that it is not obligated to provide coverage because Mr. Robinson is not its "insured" under the policy. (ECF No. 25-2.) As noted above, the policy defines "insured" as "you and the following residents of your household: (a) your relatives . . . ." (ECF No. 25-1 at 5); *accord* (ECF No. 25-2 at 2). The policy does not, however, define

"resident." *See* (ECF No. 25-1 at 5–6 ("Definitions")). As Travelers sees it, because Mr. Robinson signed a lease in Washington, D.C., he was not a resident of his parents' household, and, therefore, he was not covered by the policy. (*Id.* at 2.) While Travelers does not believe that Mr. Robinson was a resident of his parents' home, Mr. Robinson listed his address numerous times as that of his parents. *See* (ECF No. 25 ¶¶ 4–7; ECF No. 25-3; ECF No. 25-4; ECF No. 25-5).

Crucially, however, whether Mr. Robinson was a "resident" of his parents' household under the policy is entirely independent of whether he was negligent at Snowbird. *Compare, e.g. Mundey v. Erie Ins. Grp.*, 914 A.2d 1167, 1178–82 (Md. 2007) (setting forth four-factor test about living arrangements—without reference to underlying tort—to determine whether tortfeasor was "resident" under insurance policy) *with Donovan*, 498 P.3d at 386 (setting forth duties and factors relevant to breach in negligent skiing case). In this case, therefore, Maryland law authorizes Plaintiff to bring a declaratory judgment action against Travelers to determine "separate and independent policy coverage issues" prior to obtaining a final judgment as to the underlying negligence claim. *See Harford Mut. Ins. Co.*, 687 A.2d at 658, 659.

Second, and alternatively, Travelers contends that its policy contains a no-action clause precluding Plaintiff from filing suit directly against it.[18] (ECF No. 37-1 at 6.) Nevertheless, as

---

[18] As noted above, the no-action clause provides:

> **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.
>
> No one shall have any right to join us as a party to any action against any **insured**. Also, no action with respect to Coverage E can be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

(ECF No. 25-1 at 23.) Coverage E sets forth Travelers' duty to defend the insured. (*Id.* at 18.)

courts in this district have recognized, injured third parties have standing independent of the insured to participate in and defend declaratory judgment proceedings on coverage. *See, e.g.*, *Nautilus Ins. Co. v. BSA Ltd. P'ship*, 602 F. Supp. 2d 641, 646 n.2 (D. Md. 2009) (citations omitted). Indeed, even if Mr. Robinson—rather than Ms. Anderson—had been the party to implead Travelers, "a no-action clause is not a bar to a declaratory judgment action between the insurer and the insured after the insurer has denied coverage" because "the insurer's refusal to defend constitutes waiver of restrictive provisions, including no-action clauses." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Porter Hayden Co.*, 408 B.R. 66, 78 (D. Md. 2009) (first citing *U.S. Fidelity & Guar. Co. v. Nat'l Paving & Contracting Co.*, 178 A.2d 872, 875–76 (Md. 1962); and then citing *Cardin v. Pac. Emps. Ins. Co.*, 745 F. Supp. 330, 333–34 (D. Md. 1990)). In this case, Travelers refused to defend Mr. Robinson and therefore waived its no-action clause as to Mr. Robinson. *See* (ECF No. 25-2). Accordingly, the policy's no-action clause does not preclude Plaintiff's Third-Party Complaint for declaratory judgment. Travelers' Motion (ECF No. 37) is DENIED IN PART to the extent that it seeks dismissal of the Third-Party Complaint.

### D. Severance and Stay

Although dismissal is not appropriate in this case, judicial economy and balance of the parties' interests favor severance and stay of the Third-Party Complaint pending resolution of the underlying negligence claim.[19] *See* (ECF No. 37-1 at 7–8 (requesting severance and stay as alternative to dismissal).) Federal Rule of Civil Procedure 14(a)(4) provides that "[a]ny party

---

[19] "A severed action must have an independent jurisdictional basis." *Sundaram v. Baker*, Civ. No. 7:23-cv-1084-TMC, 2025 WL 4230473, at *4 n.2 (D.S.C. Mar. 7, 2025) (quoting *Herklotz v. Parkinson*, 848 F.3d 894, 898 (9th Cir. 2017)). Here, this Court has diversity jurisdiction of the third-party claim because Third-Party Plaintiff Ms. Anderson is a citizen of the State of Washington, while Third-Party Defendant Travelers is not a citizen of Washington, and there is more than $75,000 in controversy. *See* (ECF No. 25); (ECF No. 1 ¶¶ 1, 3).

may move to strike the third-party claim, to sever it, or to try it separately," while Federal Rule of Civil Procedure 21 authorizes a court to "sever any claim against a party." According to Travelers, in this case, "the need to adjudicate the coverage issue may never arise if there is a determination that Mr. Robinson is not liable to Ms. Anderson, or if Ms. Anderson's damages are within the coverage afforded to Mr. Robinson under the State Farm Policy."[20] (ECF No. 37-1 at 7.) As this Court has previously observed, district courts enjoy wide discretion when assessing third-party claims under Federal Rules 14 and 21. *See Rand Constr. Corp. v. Aegis Mechanical Corp.*, Civ. No. RDB-24-1467, 2025 WL 754608, at *4 (D. Md. Mar. 10, 2025) (collecting cases).

To determine whether to sever a claim, courts generally consider: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *N. Jersey Media Grp. Inc. v. Fox News Network, LLC*, 312 F.R.D. 111, 114 (S.D.N.Y. 2015) (quoting *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 502–03 (S.D.N.Y. 2013)). "[S]ufficient prejudice to warrant denial of impleader may be present when bringing in a third party will introduce unrelated issues and unduly complicate the original suit." *Shockley v. Hoechst Celanese Corp.*, 132 F.R.D. 429, 432 (D.S.C. 1990) (citation omitted); *see also Delgado v. Shell Oil Co.*, 231 F.3d 165, 182 (5th Cir. 2000) (noting court did not abuse discretion by declining to sever

[20] As explained above, Mr. Robinson has noted that State Farm Fire and Casualty Company and/or State Farm Mutual Automobile Insurance Company issued a policy that may provide coverage as to the negligence claim against him. (ECF No. 5-1 at 1.)

absent any "indication that the third-party claims unduly complicated or overburdened the primary claims").

In this case, as explained above, the coverage dispute at issue in the Third-Party Complaint is separate and distinct from the underlying tort claim. *See N. Jersey Media Grp.*, 312 F.R.D. at 114. Indeed, severance serves judicial economy because, as Travelers has explained, adjudication of the coverage dispute may not be necessary if (1) Mr. Robinson is not deemed liable *or* (2) Mr. Robinson's State Farm insurance covers any liability imposed. *See* (ECF No. 37-1 at 5–6.) Similarly, severance avoids prejudice by preventing delay of trial as to the negligence claim pending completion of discovery as to the third-party coverage dispute. The parties have already completed discovery as to the negligence claim, *see* (ECF No. 12 at 1), and this Memorandum Opinion and Order adjudicate the only pending dispositive motion as to that claim. Furthermore, because the third-party claim raises legal and factual issues separate and distinct from those involved in the underlying negligence claim, it may require "different witnesses and documentary proof" such that severance is appropriate. *N. Jersey Media Grp.*, 312 F.R.D. at 114.

Finally, this Court will enter a stay of the severed third-party claim pending resolution of the underlying negligence claim. District courts have broad discretion in determining whether to stay declaratory judgment proceedings, especially where, as here, "there are no parallel state proceedings." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 290 (1995). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 379 (4th Cir. 2013) (quoting *Landis*

*v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). When considering whether to exercise authority to stay proceedings, "courts consider various factors 'includ[ing] the interests of judicial economy, the hardship and equity of the moving party in the absence of a stay, and the potential prejudice to the non-moving party in the event of a stay.'" *U.S. Liab. Ins. Co. v. Krawatsky*, Civ. No. JKB-2-0538, 2022 WL 888885, at *6 (D. Md. Mar. 25, 2022) (quoting *Landress v. One Solar LLC*, 243 F. Supp. 3d 633, 646 (M.D.N.C. 2017)). The Fourth Circuit has held that "[t]he party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus.*, 715 F.2d 124, 127 (4th Cir. 1983).

In this case, judicial economy, the hardship to Travelers absent a stay, and the minimal potential prejudice to Ms. Anderson in the event of stay favor staying the Third-Party Complaint. First, as to judicial economy, courts in this district have determined that a stay is appropriate where the issue depends on whether "liability is established or defeated in the underlying lawsuit." *See, e.g.*, *U.S. Liab. Ins. Co.*, 2022 WL 888885, at *13; *Allstate Ins. Co. v. Preston*, Civ. No. JKB-19-0429, 2019 WL 3067918, at *3 (D. Md. July 12, 2019); *Allstate Ins. Co. v. Powe*, Civ. No. CCB-19-1376, 2020 WL 1159000, at *3 (D. Md. Mar. 10, 2020). Here, the need to adjudicate the coverage dispute hinges on Mr. Robinson's liability *and* whether any separate insurance through State Farm would cover any liability. *See* (ECF No. 37-1 at 5–6.) Thus, determination of the coverage dispute is not necessary to adjudicate the underlying negligence claim, and such determination may prove premature to the extent that Mr. Robinson either is not deemed liable in negligence or is deemed liable for an amount covered by any applicable State Farm Insurance policy. Second, the hardship to Travelers in litigating

a potentially premature coverage dispute also favors grant of a stay. *See, e.g.*, *Preston*, 2019 WL 3067918, at *3 (explaining declaratory judgment action depended on unresolved questions of fact and liability in underlying cases such that it was premature); *Seneca Ins. Co., Inc. v. Fayetteville Cross Creek, LLC*, 528 F. Supp. 3d 397, 404 (M.D.N.C. 2021) (staying declaratory judgment action in part to the extent it requested relief not yet ripe). Finally, there appears to be no significant hardship to Ms. Anderson in the event of a stay. She raises no affirmative arguments regarding any such hardship and waited until nearly two months after moving for summary judgment to implead Travelers. As such, a stay is appropriate, and Travelers' Motion (ECF No. 37) is GRANTED IN PART to the extent it requests severance and stay of the third-party claim against it.

**CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Summary Judgment (ECF No. 14) is DENIED. Travelers' Motion to Dismiss or, in the Alternative, to Sever and Stay Plaintiff's Third-Party Complaint (ECF No. 37) is DENIED IN PART and GRANTED IN PART. Specifically, Travelers' Motion (ECF No. 37) is DENIED to the extent it seeks dismissal of the third-party claim but GRANTED to the extent it seeks to sever and stay the third-party claim pending resolution of the underlying negligence action.

A separate Order follows.

Date: August 11, 2026

/s/
Richard D. Bennett
United States Senior District Judge